UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FEDERAL TRADE COMMISSION,

Plaintiff,

v. Case No. 8:08-cv-2062-T-27MAP

RCA CREDIT SERVICES, LLC, a Florida corporation, *et al.*,

Defendants.
_________________________________/

**REPORT AND RECOMMENDATION**

The Federal Trade Commission brings this action against Defendants for violations of §§ 13(b) and 19 of the Federal Trade Commission Act, 15 U.S.C. §§ 53(b) and 57(b), and Section 410(b) of the Credit Repair Organizations Act, 15 U.S.C. §§1679h(b), arising out of the Defendants' operation of a fraudulent credit repair scheme. The FTC alleges that the Defendants made misrepresentations to consumers about raising their FICO credit scores and removing negative credit information from their credit reports, inducing consumers to purchase the Defendant's services.[1] Because the Defendant's deceptive acts and practices caused substantial consumer injury throughout the United States, the FTC filed a complaint and motion for a temporary restraining order seeking to stop the Defendants' conduct and to preserve the status

---

[1] A FICO credit score is derived through a statistical analysis of a consumer's credit report. A credit report is a collection of information concerning a consumer's payment history as reported by lenders, as well as public record information such as judgments, tax liens, and bankruptcy filings. The Fair Isaac Corporation ("Fair Isaac"), an analytics and decision management provider, has developed the most widely used consumer credit score, commonly known as a FICO score. FICO scores range from 300 to 850, with the median score being approximately 720. *See* Plaintiff's Emergency Ex Parte Motion for Temporary Restraining Order with Asset Freeze (doc. 4, n.1).

quo of Defendants' bank accounts. As a consequence, the district judge entered a temporary restraining order against the Defendants that included provisions freezing Defendants' assets (doc. 10). Thereafter, the FTC filed a motion for a preliminary injunction seeking to extend the asset freeze, and, after a hearing, the district judge entered a preliminary injunction order extending the asset freeze. At this juncture, Defendants RCA Credit Services, LLC ("RCA") and Rick Lee Crosby, Jr. ("Crosby"), move this Court for a partial release of funds from the assets frozen pursuant to the preliminary injunction order to pay living expenses and attorney fees and to permit Crosby's business, MarketingWebTraffic.com d/b/a International Platinum to continue operating (doc. 29). After a hearing on the matter, I recommend that the asset freeze remain in effect.[2]

*A. Background facts*

*1. alleged scheme*

The FTC alleges that Defendants RCA and Crosby, RCA's registered agent, have engaged in an illegal credit repair scheme since March 2005, inducing consumers with tarnished credit to pay to improve their credit scores. Defendant Wellington joined RCA as manager in July 2007. According to the FTC, the Defendants solicit consumers nationwide via internet marketing on two web sites, www.RCACredit.com and www.RCAcreditservices.com with statements including "boost your credit score into the 700's in as little as 30 days," "remove any and all negative accounts from your credit report," and "recover your credit score fast even after a bankruptcy, foreclosure, judgment or lien." Interested consumers call a toll-free phone

[2] The district judge referred this matter to me for issuance of a Report and Recommendation as to the appropriate disposition of the motion pursuant to 28 U.S.C. § 636 (doc. 43).

number, hear a pre-recorded message, and are invited to leave a message for a return call from an RCA representative. The recorded message echoes the statements from the web sites, stating "press one for more info on how you can increase your score into the 700s in as little as 30 days," "once you become a client, a certified RCA Credit expert will be assigned to your case to ensure your success and coach you on ways to remove negative remarks and unpaid debts from your credit report while adding new positive reporting accounts to your credit file," and "this legal technique alone has been responsible for credit score jumps as high as 240 points." An RCA representative contacts the consumer and pitches RCA's credit repair services, repeating the same claims quoted above from the web sites. The Defendants also claim consumers can purchase positive credit information by adding established lines of credit (also called "trade lines") onto the consumer's file. However, before providing the promised services, the Defendants request and obtain at least a partial payment, ranging from $500 to $3,000 depending on how many trade lines a consumer purchases. The Defendants ask consumers to sign written contracts for services, but fail to provide appropriate statements to consumers with the specific information on their particular credit information, cancellation rights, and rights under state and federal laws.

According to the FTC, because the Defendants' advertising, marketing, promotion, sales offerings, and sale of credit repair services contain express or implied representations that they can remove negative information from consumers' credit reports or profiles even where such information is accurate and not obsolete, the Defendants have violated § 5(a) of the FTC Act, 15 U.S.C. § 45(a). Similarly, the Defendants' representations that they can substantially improve consumers' credit scores "into the 700s" within 30 days constitutes deceptive acts or practices in

violation of § 5(a) of the FTC Act, 15 U.S.C. § 45(a). Moreover, the Defendants violated the Credit Repair Organizations Act by charging or receiving any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform before such service is fully performed and by failing to provide consumers with a written statement containing prescribed language concerning "Consumer Credit File Rights Under State and Federal Law" and cancellation rights before executing any contracts. *See* 15 U.S.C. §1679b(b).

*2. procedural history*

The Defendants moved to continue the hearing on the FTC's motion for preliminary injunction because Crosby was in the Philippines and could not secure legal counsel prior to the hearing. The FTC opposed the motion, asserting that the Defendants had not yet complied with this Court's temporary injunction order – their web sites continued to contain the misrepresentations set forth herein and they had not yet complied with the order's accounting and repatriation requirements. Finding Crosby had sufficient notice of the hearing and failed to provide any reason sufficient to excuse his attendance at the hearing, the district judge denied the motion (doc. 22). On October 30, 2008, the district judge entered a preliminary injunction order. Part III of the order freezes the Defendants' assets. The freeze is broad, incorporating "Defendants and each of their officers, agents, directors, employees, salespersons, independent contractors, attorneys, corporations, subsidiaries, affiliates, successors, and assigns, and all other persons or entities in active concert or participation with them who receive actual notice of this Preliminary Injunction by personal service or otherwise, whether acting directing or through any trust, corporation, subsidiary, division, or other device, or any of them." (doc. 29, pp. 9-10).

Crosby now requests that the Court release a portion of the funds from the assets frozen pursuant to the terms of the preliminary injunction order for the purpose of paying his living expenses and attorney fees in defense of this action, and continuing to operate his allegedly unrelated business, MarketingWebTraffic.com d/b/a International Platinum. Crosby alleges that MarketingWebTraffic.com d/b/a International Platinum is a product fulfillment company, engaging with online retailers to establish lay-away opportunities for consumers who make online purchases from participating retailers, and is unrelated to RCA. He explains that aside from doing business as International Platinum, Marketing WebTraffic, Inc. is also a web site designer. Crosby purports that in order to pay creditors and employees and meet ordinary business expenses, International Platinum needs access to the bank account owned by Marketing WebTraffic,Inc., d/b/a International Platinum. Crosby asserts that he and his pregnant wife, who is Philippine and lives in the Philippines, need money to buy basic necessities and to pay attorney's fees and costs.

The FTC strenuously objects to the release of any funds, stating that their investigation shows that MarketingWebTraffic.com d/b/a International Platinum does not appear unrelated to RCA and the instant litigation. For instance, the company's CEO is Crosby, RCA representatives appear to offer International Platinum cards during calls with RCA consumers, and one former employee attests to commingling of MarketingWebTraffic.com funds with RCA and Crosby's personal assets. Moreover, the ATM transaction activity mirrors that of the other Crosby accounts.

*B. Discussion*

Pursuant to § 13 of the Federal Trade Commission Act, 15 U.S.C. § 53(b), a district court

has the authority to temporarily freeze personal assets as an incident to its express statutory authority to issue a permanent injunction. *F.T.C. v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1432 (11th Cir. 1984)(per curiam); *See also F.T.C. v. Gem Merchandising Corp.*, 87 F.3d 466, 469 (11th Cir. 1996). As a corollary to that authority, a court may also release or lower the amount of assets frozen. *See S.E.C. v. Duclaud Gonzalez de Castilla*, 170 F.Supp.2d 427, 429 (S.D.N.Y. 2001)(recognizing the authority of the court to freeze assets in the context of securities litigation). Nevertheless, a court may exercise its discretion to forbid or limit payment of living expenses or attorney fees out of frozen assets. *See Commodity Futures Trading Commission v. Noble Metals International, Inc.*, 67 F.3d 766, 775 (9th Cir. 1995).[3] For example, if the frozen assets fall short of the amount needed to compensate consumers for their losses, a court is within its discretion to deny an application for living expenses and attorney fees. *See Id*. The continued asset freeze provides a means of preserving funds for effective final relief, such as disgorgement.[4] *See S.E.C. v. ETS Payphones, Inc.*, 408 F.3d 727, 734 (11th Cir. 2005). Moreover, while parties to litigation generally may spend their resources as they see fit to retain counsel, they may not use their victims' assets to hire counsel to help them retain the fruits of

---

[3] As the Ninth Circuit has noted, "[a]ny doubt as to the constitutionality of freezing assets and precluding entirely their use for payment of attorney fees in circumstances even more extreme than this case have now been resolved by the Supreme Court's recent decision in *United States v. Monsanto*, 491 U.S. 600, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989) and *Caplan v. Drysdale, Chartered v. United States*, 491 U.S. 617, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989)." *Noble Metals*, 67 F.3d at 778 (discussing the reasonableness of attorney fees in an action brought by the FTC alleging deceptive trade practices against a seller of advertising specialty items and its president).

[4] Indeed, the Eleventh Circuit has held that courts may order disgorgement of defendants' ill-gotten gains pursuant to Section 13(b). *Gem Merchandising*, 87 F.3d at 470. Disgorgement serves the dual purpose of providing consumer redress and depriving wrongdoers of their ill-gotten gains. *Id.*

their violations. *See generally S.E.C. v. Quinn*, 997 F.2d 287, 289 (7th Cir. 1993).

Crosby, who has not abided by the preliminary injunction's reporting requirements, has not shown that the MarketingWebTraffic.com or International Platinum assets were derived independently from the alleged ill-gotten gains. This failure to show separately derived funds justifies the continued asset freeze to augment funds needed to provide restitution to victims of Defendants' alleged deceptive credit repair scheme and to permit disgorgement of alleged ill-gotten gains. Without a continued asset freeze of Crosby's accounts, it appears unlikely that funds will be available to satisfy any final order granting restitution to consumers affected by the alleged violations. Here, the FTC estimates that the Marketing Web Traffic account contains $11,000, approximately sixty percent of the total frozen assets disclosed to date. Moreover, despite the fact that the Defendants filed a belated notice of compliance with the preliminary injunction order's financial disclosure requirements (doc. 47), the FTC stated at the hearing that the Defendants have not provided the requisite financial disclosure. Complete and proper disclosure and accounting as required by the preliminary injunction order is necessary to evaluate the Defendants' assets, and modification to the terms of the preliminary injunction order's asset freeze would be inappropriate absent such compliance.

Based on the foregoing, I recommend the continued freeze of Crosby's and RCA's assets as set forth in the preliminary injunction order.

*C. Conclusion*

Based on the foregoing, it is hereby

RECOMMENDED:

1. Defendants RCA Credit Services, LLC and Rick Lee Crosby Jr.'s emergency motion

to modify asset freeze (doc. 36) be DENIED WITHOUT PREJUDICE.

IT IS SO REPORTED on this 17th day of December, 2008.

Mark A. Pizzo
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).

Copies furnished to:
Hon. James D. Whittemore
Counsel of Record